THE PEOPLE, PLAINTIFF ANL RESPONDENT, *v.* CERECEDO, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for the Sale of Lottery Tickets.

No. 671.—Decided June 23, 1914.

EXCEPTION—LEADING QUESTION—TRANSCRIPT OF RECORD.—When a question is objected to on the ground that it is leading, it is necessary that the question alleged to be leading be transcribed *verbatim* in the record in order that the Supreme Court may pass upon the exception taken to the overruling of the said objection.

EVIDENCE—ERROR NOT PREJUDICIAL—TEMPORARY ADMISSION OF EVIDENCE.—When in a trial before a court without a jury the court allows testimony objected to to remain in the record temporarily, if the party making the objection failed to insist subsequently that it be eliminated from the record and, besides, the rest of the evidence is sufficient without said testimony to establish the guilt of the accused, the error which may have been committed by the court cannot be deemed prejudicial to the accused.

ID.—EVIDENCE OBTAINED BY SEARCH WARRANT—OBJECTION.—When evidence obtained under search warrant is offered against the accused and he makes no objection thereto until the trial is in progress, the objection to its admission is too late and the admission of the evidence is not error.

ID.—LOTTERY—PURCHASER OF TICKETS—ACCOMPLICE.—According to section 293 of the Penal Code, the sale and not the purchase of lottery tickets constitutes the crime, therefore the purchaser is not an accomplice and his testimony is admissible against the seller without being corroborated in the manner required by section 253 of the Code of Criminal Procedure.

ID.—LOTTERY TICKETS.—In a prosecution for the sale of lottery tickets it is not necessary to offer in evidence the tickets, and when the evidence shows that lottery tickets were sold, this alone is sufficient to prove the existence of the lottery.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

*Messrs. Travieso & Iriarte* and *Jacinto Texidor* for the appellant.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal from a judgment rendered by the District Court of San Juan, Section 2, in which the appellant, Manuel Cerecedo, was sentenced to one month's imprisonment and to pay the costs of the action after having been convicted of selling lottery tickets. The pertinent part of the information reads as follows:

"That during the month of August, 1913, the said Manuel Cerecedo, in the city of San Juan of the judicial district of the same name, did unlawfully and wilfully sell a certain number of Santo Domingo lottery tickets to Juan Audinot for a certain sum of money, this being contrary to the law in such case made and provided and against the peace and dignity of The People of Porto Rico."

In his brief the appellant assigns seven errors. We will consider and pass upon them in the order in which they have been presented.

"1. The defense understands that the court erred in allowing The People to put a leading question to witness Juan Audinot and to show him a document which was not the one referred to by the witness."

The exception taken as to this first error alleged appears in the record as follows:

"When the *fiscal* showed a paper to the witness the attorney for the accused objected to the special form of the *fiscal's* question, it being a leading question. The *fiscal* had shown the witness a paper which was not the invoice under discussion, as the witness had just testified that he had torn up the invoice. The defense objected to the form of the question together with the exhibition of a paper which could not be the invoice according to the testimony of the witness."

As will be seen, the exception was taken "to the special form of the *fiscal's* question, it being a leading question," and as the exact question put by the *fiscal* is not included in the record, we have no basis on which to decide whether it was leading or not.

"2. When witness Hipolita Fuentes, wife of Juan Audinot, was testifying she said that one day she received a package for her husband and that Cerecedo sent the package; that she knew that Cerecedo sent the package because the woman who brought the package said so (page 5 of the record). As this was hearsay evidence the attorney for the defense objected to its admission, but the court allowed it to remain in the record until it could be seen whether the relation of the bearer of the package to the accused was established. The ruling of the court was excepted to by the defense."

As will be seen, the court allowed the answer objected to to remain in the record only temporarily and we have examined the transcript and find nothing to show that after the evidence was all in the accused insisted that said answer should be stricken from the record.

Besides, this was a misdemeanor being tried without a jury and the evidence introduced, as we shall have occasion to see later, was sufficient to establish the guilt of the accused without the testimony of Hipolita Fuentes on the point objected to. Under such circumstances, even though an error were committed, such error cannot be held to have been prejudicial to the accused.

"3. The defense understands that the court erred in admitting in evidence for The People the search-warrant which is copied in the transcript of the record."

We have examined the transcript of the record and fail to find a copy of the search-warrant. We have no basis, therefore, upon which to consider and decide the question raised by the appellant.

"4. The court, in our opinion, erred in admitting in evidence an account book which witness St. Elmo said he found and seized in the house of Cerecedo Hermanos. The defense excepted to said admission."

The specific objection made by the defense is that the account contained in the said book and offered in evidence is too vague and that it has not been shown to have any relation to the offense charged. The account is as follows:

"JUAN AUDINOT,
"Government employee, San Sebastián 42.

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | 17 | 25 n 2.30 · Cash          26 | 57 | 50 | | |
| | | 4 | | | | |
| | | 13 | | | 43 | |
| | | Balance | | | 14 | 50 |
| | | | 57 | 50 | 57 | 50 |
| | | Balance due, | 14 | 50 | | |
| 9 | 7 | 25   25 | 57 | 50 | | |
| | | | 72 | | | |
| | | | 72 | | | |
| | 3 | Account rendered, | | | | |

Before the foregoing account was offered in evidence, according to pages 3 and 4 of the transcript of the record, witness Audinot had testified as follows:

"He said that he was a resident of San Juan and knew the accused, from whom he bought 25 tickets in the month of August at $2.25 each; that he went to Cerecedo's house to ask him to sell him

25 tickets and Cerecedo said that he would answer him later and when the witness reached his house on the following day he found an envelope which had been sent him containing the tickets; that this occurred on August 25 and that the witness went to Cerecedo's house and paid him $46 and some cents for the tickets; that he took 35 (?) more for the drawing of September 7 and went personally to pay for them and before making the payment he received an invoice which he had destroyed; that before paying Cerecedo the latter informed him that he had sent the tickets corresponding to September 7 and that he had to cable the remittance and asked him to bring him the money; that he received the invoice during the first days of September. Upon being questioned by the *fiscal* as to how the receipt read, he replied that he had destroyed it and that it stated that Cerecedo had to make remittance by cable.''

If we examine the account in relation to the testimony of witness Audinot, we shall easily reach the conclusion that the account is the written evidence kept of the two sales of tickets to which the testimony refers. Only slight contradictions in the price of the tickets and in the amount credited are noticed and these contradictions do not destroy the foregoing conclusion.

"5. In our opinion the court erred in admitting in evidence a letter book which St. Elmo testified he had found in the search he made in the house of Cerecedo Hermanos. From said book there was offered in evidence a page containing a note signed M, addressed to Juan Audinot, which note we copy in the statement of the case which forms a part of this appeal. The appellant excepted to the admission of that evidence.''

The note, as it appears in the transcript, reads as follows:

"Mr. Juan Audinot, San Sebastián 42, September 7. Balance of your account to date, $2.

"P. S. I have to remit by cable the total amount of each series and as you have yet to settle the amount which appears in your account, you should pay the same as soon as possible. Yours truly M.''

If we consider this note in connection with the testimony of Audinot and take into account that the said note appears

in a copying book which was found in the commercial estab-lishment of the accused, we must conclude that the note bears sufficient relation to the crime charged and could be admitted in evidence.

"6. The defense understands that the admission by the court of the account book and the letter book, although they were proved to belong to defendant Cerecedo, was an error prejudicial to the essential rights of the accused."

In discussing this error the appellant contends that the district court violated principles made sacred by the Fourth and Fifth Amendments to the Constitution of the United States of America. However, there is one circumstance which prevents this error from being even alleged and discussed in the present case.

The books were seized by virtue of a certain search-warrant issued by the Municipal Judge of San Juan and the accused made no objection up to the time of the trial. That was not the proper time to make the objection and the district court, in admitting the papers which, as we have seen, referred to the crime charged, did not violate any constitutional principle, according to the following jurisprudence.

"Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search-warrant were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done; but this is no good reason for excluding the papers seized as evidence, if they were pertinent to the issue, as they unquestionably were. When papers are offered in evidence the court can take no notice of how they were obtained, whether lawfully or unlawfully; nor would they form a collateral issue to determine that question." Commonwealth v. Dana, 2 Metcalf, 329; Wigmore on Evidence, sec. 2183; 35 Cyc., Searches and Seizures, 1271, 1272.

"The same point had been ruled in People v. Adams, 176 N. Y., 351, from which decision the case was brought to this court, where it was held that if the papers seized in addition to the policy slips

were competent evidence in the case, as the court held they were, they were admissible in evidence at the trial, the court saying (p. 358) : 'The underlying principle obviously is that the court, when engaged in trying a criminal cause, will not take notice of the manner in which witnesses have possessed themselves of papers, or other articles of personal property, which are material and properly offered in evidence.' This doctrine thus laid down by the New York Court of Appeals and approved by this court, that a court will not in trying a criminal cause permit a collateral issue to be raised as to the source of competent testimony, has the sanction of so many state cases that it would be impracticable to cite or refer to them in detail. Many of them are collected in the note to *State* v. *Turner,* 136 Am. St. Rep., 129, 135 *et seq.* After citing numerous cases the editor says: 'The underlying principle of all these decisions obviously is, that the court, when engaged in the trial cf a criminal action, will not take notice of the manner in which a witness has possessed himself of papers or other chattels, subjects of evidence, which are material and properly offered in evidence: *People* v. *Adams,* 176 N. Y., 351; 98 Am. St. Rep., 675; 68 N. E., 636; 63 L. R. A., 406. Such an investigation is not involved necessarily in the litigation in chief, and to pursue it would be to halt in the orderly progress of a cause, and conisder incidentally a question which has happened to cross the path of such litigation, and which is wholly independent thereof.' '' *Weeks* v. *United States,* 232 U. S., 395.

"7. The court erred in its ruling on the motion of the defense for a directed verdict of acquittal on the ground of lack of evidence to sustain the information.''

The evidence introduced in this case consists of the testimony of Juan Audinot and Hipólita Fuentes, which we have already reproduced, of that of Fernando J. Géigel, Municipal Judge of San Juan, who issued the search warrant and was present at the search, and of that of Walter M. St. Elmo, Chief of the Information Bureau of Insular Police, who made the search, and also of the papers transcribed in considering assignments of error numbers 4 and 5.

The appellant contends that the accused cannot be convicted on the testimony of Audinot because he is an accomplice.

In the case of *The People* v. *Vázquez,* 19 P. R. R., 991, this court laid down the following doctrine:

"As section 295 of the Penal Code makes only the selling of lottery tickets a crime and not the buying of them, the purchaser cannot be considered as an accomplice of the seller; therefore his testimony in an action against the seller does not require the corroboration required by section 253 of the Code of Criminal Procedure regarding the testimony of accomplices in general." (Syllabus.)

Applying the foregoing doctrine, the question raised must be decided against the appellant.

The appellant also contends that the evidence is insufficient because the lottery tickets were not offered in evidence and because the existence of the lottery was not shown.

In the first place, we will say that even if the tickets are really the best evidence, as the secondary evidence was admitted without objection by the accused, he is now estopped from raising that question. See *The People* v. *de Jesús,* 18 P. R. R., 575, and *The People* v. *Vega,* decided April 21, 1914. And in the second place we will say that, in accordance with the two decisions cited below and also in the *fiscal's* brief, it is not indispensable to introduce in evidence the tickets sold in cases of this kind, and the fact that the evidence shows that Santo Domingo lottery tickets were sold is sufficient evidence of itself to show the existence of the said lottery.

"The indictment charges a sale to one Bill Murdock of a lottery ticket in the lottery known as the 'Louisiana Lottery, situated in the State of Louisiana.' The first witness describes it as a ticket in the 'Louisiana Lottery.' The defendant describes it as a ticket in the 'Louisiana State Lottery.' The ticket itself was not produced. If it be conceded that the use of the term 'State,' in connection with the ticket, was a matter of essential description, and had to be proved, still there would be sufficient evidence to sustain the conviction on this point, as the first witness describes it as alleged in the indictment." *Anderson* v. *State,* 39 S. W. Rep., 109.

"There was abundant evidence in the case, to justify the denial of the motion, that there were some parties purporting to be and

calling themselves by the name of the Louisiana State Lottery Company who were carrying on a lottery, but it was wholly immaterial whether they were the same persons named in this act, or whether those persons had accepted their charter or not. It was none the less a lottery in fact and within the prohibition of the statute, whether legally established or wholly illegal, whether its promoters were duly incorporated or not. Indeed, we think that the mailing of a letter or circular concerning a projected lottery, one not yet in existence, would clearly be within the letter and spirit of the statute, if it were a letter or circular promoting or designed to aid in the organization and setting up of a lottery. There was, therefore, no reason why, at this stage of the case, the court should direct an acquittal of the defendant, when the papers themselves, with the mailing of which he was charged, bore on their face strong if not conclusive evidence that they related to an existing or established lottery. No more evidence of the existence of a lottery need to have been given to justify a conviction than the papers and tickets enclosed in the envelope.'' *United States* v. *Noelke*, 1 Fed. Rep., 426, 440.

Summarizing, then, we will say that as it cannot be concluded that any of the errors assigned by the appellant in his brief have been committed and as a careful examination of the transcript discloses no fundamental error against the accused, the judgment appealed from must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.